Steven David of aver
203 Nettleingham Road
Sandpoint, near [83864]
State of Idaho
(208)304-6382

Appearing in Propria Persona

**U.S. COURTS**

JUL 2 8, 2010

Rcvd_____ Filed_____ Time 3:32 pm

ELIZABETH A. SMITH, CLERK
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO
NORTHERN DIVISION

| | |
|---|---|
| Steven David of aver ) | CASE NO. *CV 10-375-LMB* |
| ) | |
| Plaintiff, ) | COMPLAINT |
| ) | |
| vs. ) | (DEMAND FOR TRIAL BY JURY) |
| ) | |
| Wal-Mart Stores, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

Plaintiff, Steven David of aver, hereinafter referred to as "Plaintiff", alleges as his Complaint against Defendant, Wal-Mart Stores, Inc., hereinafter referred to as "Defendant", as follows:

### JURISDICTION AND VENUE

1.     This is a civil action arising under the laws of the United States and is brought pursuant to the Americans with Disabilities Act of 1990, as amended, (ADA) (42 U.S.C.A. §§ 12101 et seq.) which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C.A. §§ 2000e et seq., and 29 CFR Part 1630, and § 102 of the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a. This Court has jurisdiction of the claims pursuant to 28 USCA §§ 1331, 1343.

2.     On April 29th, 2010, the U.S. Equal Employment Opportunity Commission ("EEOC") issued to the Plaintiff a Notice of Right to Sue Defendant in the United States District Court. A

Complaint

copy of the Notice of Right to Sue is attached as Exhibit 1 and is incorporated herein by its reference. Plaintiff has filed suit within 90 days of his receipt of the Notice of Right to Sue.

3.      There exists other claims that are so related to the claims in this action that they form part of the same case or controversy in which this Court has supplemental jurisdiction pursuant to 28 U.S.C.A. §§ 1332, 1367.

4.      Venue in the northern division of the federal judicial district of the State of Idaho is proper under 28 U.S.C.A. §§ 92, 1391(a) and (c) and 42 U.S.C.A. 2000e-5(f)(3), Dist. Idaho Loc. Civ. R. 3.1, where a substantial part of the events or omissions giving rise to the claim occurred.

PARTIES

5.      Plaintiff is a Naturalized Citizen of the State of California, a declared resident of the State of Montana, but who inhabits the majority of time in the State of Idaho.

6.      Defendant is a general domestic corporation (0732109) incorporated in the State of Delaware, in which Defendant has its home office located at 702 SW 8th Street, Bentonville, near [72716-8611], State of Arkansas and who has retail outlets, Wal Mart Stores, throughout the several States of the United States, and has on information and belief in excess of 500 employees which exceeds the statutory minimum number of 15 employees.

7.      Defendant has a Certificate of Authority to transact business in the State of Idaho under the provisions of the Idaho Business Corporation Act. Defendant also has the same in the State of Montana.

BACKGROUND

8.      Plaintiff began his employment with Defendant on July 11, 2007, at the Wal-Mart Store located in Ponderay, Bonner County, State of Idaho. Plaintiff's initial position was as a member of Inventory Control Stocking (ICS) Associate for the grocery department.

9.      Prior to when Plaintiff was hired, he had continued problems eating due to his hiatal hernia and esophageal discomfort, a disability covered under the Americans with Disability Act, hereinafter referred to as the "ADA."

10.     As a by-product of the Plaintiff's digestive disability were various food adverse reactions, which affected Plaintiff's capacity to breath (respiratory system).

11.     Plaintiff's immediate supervisors were Will Van Corbach, Store Manager, Darrell Brown,

Complaint

Co-Manager and Stephanie, Assistant Manager.

12.    Plaintiff while on his breaks and lunch hour would occasionally show signs of his disability by displaying chocking like signs and puking from food being lodged in the hiatal hernia blocking off his ability to breath.

13.    Plaintiff was transferred to ICS Associate General Merchandise side because of an injury to his back. While being injured Plaintiff volunteered to be trained as a cashier while his back was under the doctor care by the Defendant who decommissioned him from ICS.

14.    I was asked what the company could change to increase Associate safety. In my response I stated that the shipments coming in with multiple cases of heavy canned goods should be placed on pallets so other goods can be stacked on top.

15.    The reasoning for the transfer to ICS Associate General Merchandise side was because the shipments coming in did not have a multitude of grocery merchandise.

16.    Plaintiff's immediate supervisors were Will Van Corbach, Store Manager, Darrell Brown, Co-Manager and J.R. Rodger, Assistant Manager.

17.    On or about September or October of 2007 while being in the lunch room it was witnessed by Associates and a member of management, Plaintiff's disability of chocking and puking food from food being lodged in the hiatal hernia blocking off his ability to breath.

18.    In fact two (2) associates assisted Plaintiff in getting his air flow re-established by giving him the Heimlich Maneuver.

19.    Management of Wal-Mart Store at Ponderay, Bonner County, State of Idaho never initiated discussions pertaining to accommodations in compliance with the Americans with Disabilities Act.

20.    Defendant changed their shipments to mixing both grocery and general merchandise together and they eliminated any distinction between grocery and general merchandise ICS Associates.

21.    I re-injured my back while unloading multiple cases of Maonaise (there must have been over thirty cases of the stuff) from the rollers to a pallet.

22.    Management decided to move me to the Apparel Department under Assistant Manager Donna Smith and Terri, the Department Manager of Menswear.

Complaint

23.    I was to also assist the cashiers if necessary.

24.    Donna and Terri were treating me right, but my disabilities were getting worse with more occurrences of food getting stuck in my esophagus and mild adverse reactions to food which deprived me of sleep, which then affected my attendance.

25.    In February 2008, Assistant Manager Joey Alwine took over the Apparel Department due to their annual Assistant Manager switch and he was made aware of my disabilities because of attendance.

26.    Because I was a good worker, Joey and Terri cut me some slack about attendance and allowed me to substitute hours. I felt that everybody counted on me to get stuff done and doing it right.

27.    A new co-manager for the general merchandise side Sam Whipple, who Defendant should know is a real asset for them.

28.    As a precursor Co-Manager Janice decided to limit my use of the fitting room table to fold table and t-shirts. The table slide outs were wholly inadequate to fold shirts on and bending over placed an unnecessary strain on my already hurt back. She was orally notified about my back problem and responded, too bad.

29.    Management placed so many constraints on folding those shirts, that it was impossible for me to get my job done. I made it clear to them about my back pain. Their response was too bad.

30.    On or about November, 2008, I was given a written verbal warning by Assistant Manager Steven Dawes for using the fitting room's table to fold shirts, pursuant to Co-Manager Janice's edict. I was charged with insubordination, but these actions was a continuation by management to violate my ADA rights and breach the covenant of good faith and fair dealing pursuant to Wal-Mart's Policies.

31.    On or about December 26th, 2008, Plaintiff was eating a hot dog which got stuck in his throat and on the 27th day of December went to the Bonner County Hospital, Emergency to have the hot dog extracted from his esophagus.

32.    Management was made aware of Plaintiff's condition as Plaintiff called in sick.

33.    When Plaintiff got back to work Defendant was notified that Plaintiff was required to have surgical procedure of an endoscopy and EDG to widen the esophageal track.

Complaint

34.    Store Manager Will Van Corbach and other members of management were made aware and gave the Plaintiff days off to have this surgery scheduled for January 26th, 2009.

35.    Store manager Will Van Corbach requested that do not participate in the hot dog cookout that Associate's was getting for having consecutive days without an accident, which was schedule prior to 26th of January, 2009.

36.    To the best of the Plaintiff's knowledge and belief Plaintiff was also given time off for the 27th day of January for recovery.

37.    Unknown to the Plaintiff the EDG surgery exacerbated Plaintiff's allergic like reactions to certain foods which affected his digestive tract and respiratory system.

38.    In late January, Joey had told us that he was moving to be the Assistant Manager over Garden Center and that we would be getting Assistant Manager Mary Young.

39.    Assistant Manager Mary Young has a history of letting go a large percentage of the current Associates only to replace them with people she "likes."

40.    I spoke with Joey who indicated to me that he had a cashier position open in the garden center that he wanted to fill. I mentioned to him that I would be interested in that position.

41.    I spoke with Joey again about the cashier position in garden center and mentioned to him about my concerns that I was being targeted because of my ADA disabilities. He assured me that the position was still open and that I was mistaken about that the company was trying to weed me out.

42.    My requests to be transferred to Garden Center pursuant to the ADA, has never been answered by Wal-Mart and is unresolved.

43.    On or about March 20th, 2009 I was again requested to go to the management office to speak to Assistant Manager Mary Young.

44.    When I got there I was greeted by Mary and Assistant Manager Steve Dawes in which we had a closed door session as I was informed and provided a written warning for attendance/punctuality.

45.    I again claimed ADA protections as attendance issues were related and connected to my known disabilities and that these actions was a continuation by management to violate my ADA rights and breach the covenant of good faith and fair dealing pursuant to Wal-Mart's Policies.

Complaint

46.    To no avail, the coaching for Improvement store policy was not followed and I was one step closer to becoming unemployed. From the previous occurrence of coaching along with this act, I was under extreme duress of continually watching my back.

47.    On March 28, 2008, I was presented with a document to sign called, "New Associate Orientation Checklist" showing what store polices I agreed to be bound to as an addition to my employment contract with Wal-Mart Stores, Inc.,

48.    On or about April 17th, 2009, Again Assistant Manager Mary Young and Assistant Manager Steve Dawes wanted to Speak to me while I was dealing with my known disabilities.

49.    Mary accused me of unauthorized use of company time, even though I explained to Mary and Steve that I was dealing with my disability due to cleaning up a chemical spill.

50.    Once again, my ADA rights were violated and I was given a final written notice called a "Decision Day" and I was required to respond in writing which determined whether I would be remain employed or fired.

51.    As required, I wrote a decision day response and submitted it on the 20th day of April, 2009.

52.    A Incident Report was filed with the Defendant placing them on Notice that I was injured on the job due to cleaning the chemical spill.

53.    Because of how I was treated on the 20th of April, 2009, I decided to fully document the events with a secondary letter and at the same time made my first request for accommodation on the 21st day of April, 2009, which I received no response to either of them.

54.    I also called Don Millikan the Human Resource Manger for the Ponderay store, who I was told was there to protect my rights and interests.

55.    On the 22nd of April, 2009 I spoke with Don by phone and discussed the various violations of store policy concerning the write ups as it applied to store policy and the ADA.

56.    I decided to again document the conversation by filing a second supplemental letter which again I got no response it.

57.    Pursuant to my Decision Day response I had agreed to find out what was causing my disabilities and if I could get it cured. Once again after doing some research I filed a third supplemental letter, since I had not gotten any response to my initial decision day letter.

Complaint

58.     On May 7th, 2009, I made a written request for employment records, in which only number 1, 2, and 4 was provided to the Plaintiff.

59.     On May 8th, 2009, I made a written request for temporary transfer and complaint of discrimination, which was presented at the unscheduled meeting with Don, Will, and Mary. Don provided to me a written response in which as occurred in previous meetings with Don and Mary they requested confidential medical information in derogation to the ADA. Also Don tried to convert my ADA claims into FMLA claims which are two totally separate programs.

60.     On May 9th, 2009, another event of retaliation occurred by Mary and was reported directly to Will who immediately corrected the situation.

61.     On May 15th, 2009, I gave Don a response to his letter and re-requested my requests for accommodation and transfer. I also made my first complaint of retaliation by Mary and included the details. Don never replied to any of my issues raised.

62.     Provided copies of the minutes from the May 8th, 2009 unscheduled meeting to document what had transpired and what was said as my my accommodation requests. No objections as to the contents was ever made.

63.     On May 19th, 2009, a second incident of retaliation by Mary in which I had to file an Incident Report with the Defendant.

64.     On May 21st, 2009 I filed a claim against Mary for Discrimination for violations of the American with Disabilities Act in conjunction with the Coaching practice and for her acts of retaliation.

65.     On May 22nd, 2009, I made a Second Request for Accommodation.

66.     On May 29th, 2009, I made a request that Mary not conduct my upcoming Evaluation since there was obvious a conflict between us.

67.     On June 1st, 2009 I filed a claim with the EEOC against Defendant for violations of the ADA.

68.     On or about June 2nd, 2009, Will was told that my request to not have Mary conduct my evaluation was denied by Don. Mary conducted my evaluation while Will was present.

69.     On or about June 18th, 2009, I received the results from my blood tests, showing that the Plaintiff was anemic, another disability covered under the ADA.  Will received a copy of this test

Complaint

results which was made part of my employee file.

70. Will was also served a copy of the ADA and pertinent parts of the FMLA federal regulations.

71. On July 4th, 2009, I was told by Co-manager Brian to report for cashier duty until further notice. No other explanation was given.

72. On or about July 6th, 2009, I served on Defendant a Notice of Disability which included another request for accommodation concerning my anemia. I received no answer to this request.

73. On July 10th, 2009, I felt that something was wrong, but could not get any answers, due to I have never worked as a cashier on so many consecutive days.

74. On July 16th, 2009, I presented Will with a letter from my Allergist who strongly suggested to Defendant to provide me with accommodation and advise him that I had a serious disabilities.

75. On July 16th, 2009 within several hours after presenting my doctors' letter I was fired for misconduct with Coachings.

76. Will stated to me that the decision to fire me was determined on the 15th of July, without any prior Notice, nor opportunity for me to defend in violation to my civil rights protections and the ADA.

77. In August of 2009, there was an Administrative hearing conducted by the Unemployment Commission pertaining to unemployment benefits, I raised three issues: 1) ADA violations by Defendant; 2) That their actions was a breach of my employment contract; and 3) that their claims failed to state a cause in accordance with their policies. The Commission determined that I was fired without cause in violation to my employment contract, because there was insufficient evidence to support their claims.

78 – 99 Reserved

## VIOLATION OF ADA
## COUNT I

100. Plaintiff re-alleges paragraphs 1-99.

101. Steven David of aver is a qualified individual within the meaning of ADA § 101(8)(42 U.S.C.A. § 12118(8)) in that he has a digestive, respiratory and anemic disabilities.

Complaint

102.   Wal-Mart Store Inc., is an "employer" and a "covered entity" under ADA § 101(2), 5(A)(42 U.S.C.A. § 12111(a)(5)(a)).

103.   Prior to and at the time of his termination, Steven David of aver was an employee of Wal-Mart Stores, Inc., under ADA § 101(4)(42 U.S.C.A. § 12111(4)).

104.   Prior to and at the time of his termination, Steven David of aver was qualified for employment as a Cashier/Sales Associate of Wal-Mart Stores, Inc.

105.   On July 16th, 2009, Steven David of aver was terminated in violation of the ADA due to his disability. ADA § 102(a)(42 U.S.C.A. § 12112(a)).

106.   On July 16th, 2009, Wal-Mart Stores, Inc., was served with a doctor's letter demanding from Defendant that they provide to Steven David of aver accommodation, which Wal Mart Stores, Inc., responded in less than four (4) hours by termination of his employment.

107.   Steven David of aver has met the prerequisites for filing suit under the ADA. On September 25, 2009, Steven David of aver filed a Charge of Discrimination ("Charge') with the Seattle Regional Office of the EEOC, alleging that he had been discriminated against in violation of the ADA. A copy of the Charge is attached as Exhibit 2 and is incorporated herein by its reference. On April 29th, 2010, the U.S. Equal Employment Opportunity Commission ("EEOC") issued to the Plaintiff a Notice of Right to Sue Defendant in the United States District Court. A copy of the Notice of Right to Sue is attached as Exhibit 1 and is incorporated herein by its reference. Plaintiff has filed suit within 90 days of his receipt of the Notice of Right to Sue.

108.   Prior to Steven David of aver being terminated, On June 1st, 2009, Steven David of aver Sent to the Seattle Regional Office a completed Equal Employment Opportunity Commission Intake Questionnaire detailing numerous ADA violations by Wal-Mart Stores, Inc., in which agents for Wal-Mart Stores Inc., was provided Notice that a complaint had been filed with the EEOC.

109.   Steven David of aver has been damaged by Wal-Mart Stores, Inc., many violations of the ADA as set forth in this complaint in separate counts infra.

110.   Steven David of aver has been damaged by Wal-Mart Stores, Inc., many violations of the ADA inasmuch as Steven David of aver:

   a) has been without a job since July 16th, 2009;

Complaint

b)  the manner in which Wal-Mart Stores, Inc., fired Steven David of aver effectively caused other economic losses;

c) the manner in which Wal-Mart Stores, Inc., fired Steven David of aver effectively was a violation of store policy, in breach of covenant of good faith and fair dealing or contract;

d) has been denied access to certain benefits to which he was entitled under Wal-Mart's Stores, Inc., benefit plan.

111.    As a proximate cause of Defendant's termination of Plaintiff in retaliation for Plaintiff's involvement in protected activity is an unlawful employment practice under Americans with Disabilities Act (42 USC §§ 12101 et seqq., and 42 USCA § 2000e) to Plaintiff's detriment, Plaintiff has suffered and continues to suffer substantial losses in compensation all to his damage in a sum exceeding $800,000 plus $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

VIOLATION OF ADA – 42 USCA § 12112(b)(1)
COUNT II

112.    Plaintiff re-alleges paragraphs 1-111

113.    Defendant did discriminate against the Plaintiff in violation to the ADA by limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee, all being contrary to law.

114.    Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in an amount of  $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

VIOLATION OF ADA – 42 USCA § 12112(b)(3)
COUNT III

115.    Plaintiff re-alleges paragraphs 1-114

116.    Defendant did discriminate against the Plaintiff in violation to the ADA by utilizing standards, criteria, or methods of administration that either (A) that have the effect of discrimination on the basis of disability; or  (B) that perpetuate the discrimination of others who are subject to common administrative control, all being contrary to law.

Page 10 of 21

117.   Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in amount of $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

VIOLATION OF ADA – 42 USCA § 12112(b)(4)<br>COUNT IV

118.   Plaintiff re-alleges paragraphs 1-117

119.   Defendant did discriminate against the Plaintiff in violation to the ADA by excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association, all being contrary to law.

120.   Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in an amount of $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.    .

VIOLATION OF ADA – 42 USCA § 12112(b)(5)(A)<br>COUNT IV

121.   Plaintiff re-alleges paragraphs 1-120

122.   Defendant did discriminate against the Plaintiff in violation to the ADA by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity, all being contrary to law.

123.   Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in an amount of $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

VIOLATION OF ADA – 42 USCA § 12112(b)(5)(B)<br>COUNT V

124.   Plaintiff re-alleges paragraphs 1-123

125.   Defendant did discriminate against the Plaintiff in violation to the ADA by denying employment opportunities to a job applicant or employee who is an otherwise qualified

Complaint

individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant, all being contrary to law.

126.    Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in an amount of $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

VIOLATION OF ADA – 42 USCA § 12112(d)
COUNT VI

127.    Plaintiff re-alleges paragraphs 1-126

128.    Defendant did discriminate against the Plaintiff in violation to the ADA by committing acts prohibited of requesting make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability for FMLA purposes by which no business necessity was shown, all being contrary to law.

129.    Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in an amount of $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

VIOLATION OF ADA – 42 USCA § 12116
COUNT VII through COUNT LXXXI

130.    Plaintiff re-alleges paragraphs 1-129

131.    Defendant did discriminate against the Plaintiff in violation to the ADA by committing specified acts prohibited under 29 CFR part 1630 in para materia with 42 USCA § 12116 all being contrary to law, as separately specified herein of:

1.    29 CFR § 1630.4(b) - Failure to Transfer upon Request, see Exhibits 8 &11 - Position has been subsequently filled after my Request.

2.    29 CFR § 1630.4(b) - March 20th, 2009 written disciplinary action affected my ability for transfer, see Exhibit 18 - Transfer Policy.

3.    29 CFR § 1630.4(b) - April17th, 2009 Decision Day disciplinary action affected my ability for transfer, see Exhibit 18 - Transfer Policy.

4.    29 CFR § 1630.4(c) - By the failure to transfer would have been a change in compensation by   an increase in my hourly pay from $10.80 to $11.00

Page 12 of 21

Complaint

per hour starting from early to mid May, see Exhibit 8.

5.   29 CFR § 1630.4(b) &(d) - By the failure to transfer would have been a upgrading to my job  classification from class 2 to class 3, see Exhibit 8.

6.   29 CFR § 1630.4(e) -  March 20th, 2009 written disciplinary action was not conducted in accordance with ADA under this section.

7.   29 CFR § 1630.4(e) - Denial of Request for Accommodation, see Exhibits 4 and 11 in derogation to the ADA.

8.   29 CFR § 1630.4(e) - No Response to Supplemental Request for Accommodation, see Exhibit 13 in derogation to the ADA.

9.   29 CFR § 1630.4(e) and/or 29 CFR § 1630.4(i) failure to provide compensation as required under policy, Exhibit 22 and the Time Adjustment, Exhibit 15 and are incorporated herein by its  reference. (This claim may be negated by June 11th, 2009.)

10.   29 CFR § 1630.4(i) - March 20th, 2009 written disciplinary action was not conducted in accordance with Exhibit 21 - Policy- Coaching for Improvement (PD-30) in conjunction with  the ADA.

11.   29 CFR § 1630.4(i) - April 17th, 2009 Decision Day disciplinary action was not conducted in accordance with Exhibit 21 - Policy- Coaching for Improvement (PD-30) in conjunction with  the ADA.

12.   29 CFR § 1630.4(i) - Violating Safety policy and ADA on May 22nd, 2009, Doing Chemical Claims when had sufficient knowledge of the possibility to adversely affect the Undersign Associate, see Exhibit 14 - Incident Report.

13.   29 CFR § 1630.7(a) – Don Milikan's letter, Exhibit 8, and is incorporated herein by its reference is proof of violation of ADA.

14.   29 CFR § 1630.7(a) – Will and Don Milikan's denial of Request for Accommodation, Exhibit 8,  request number 5, under supposed policy – Dress Code, Exhibit 19, and is incorporated herein by  its  reference  is proof of violation of ADA.

15.   29 CFR § 1630.7(a) – Mary's disciplinary action of April 17th, 2009, against the Undersign Associate, see Exhibit 12, Exhibit G, - Coaching for Improvement, Coach # 4030388, under Action Points / Associate's Comments, is the First retaliatory act in contravention to the

Complaint

ADA, as she had personal knowledge of the Undersign Associates' known physical disabilities at that time, see Exhibit 12, Exhibit G – Coaching for Improvement, Coach # 4094163.

16. 29 CFR § 1630.7(a) – Mary's failure to conclude the decision day on April 20th, 2009, against the Undersign Associate in violation to policies (PD-19) & (PD-30), Exhibit 20 and 21 and under color of policies (PD-19) & (PD-30) in violation to the ADA – CFR § 1630.4(i).

17. 29 CFR § 1630.7(a) - Mary's disciplinary action March 20th, 2009, against the Undersign Associate in violation to policies (PD-19) & (PD-30), Exhibit 20 and 21 and under color of policies (PD-19), (PD-30), & (PD-52), Exhibit 23, all being in violation to the ADA – CFR § 1630.4(i).

18. 29 CFR § 1630.7(b) - Don Milikan's letter, Exhibit 8, and is incorporated herein by its reference is proof of violation of ADA.

19. 29 CFR § 1630.7(b) – Exhibit 24 – Policy – Accommodation in Employment (PD-58) and is incorporated herein by its reference is proof of violation of ADA.

20. 29 CFR § 1630.7(b) – Will and Don Milikan's denial of Request for Accommodation, Exhibit 8, request number 5, under supposed policy – Dress Code, Exhibit 19, and is incorporated herein by ts reference is proof of violation of ADA.

21. 29 CFR § 1630.7(a) – Mary's disciplinary action of April 17th, 2009, against the Undersign Associate, see Exhibit 12, Exhibit G, - Coaching for Improvement, Coach # 4030388, under Action Points / Associate's Comments, is the First retaliatory act in contravention to the ADA, as she had personal knowledge of the Undersign Associates' known physical disabilities at that time, see Exhibit 12, Exhibit G – Coaching for Improvement, Coach # 4094163.

22. 29 CFR § 1630.7(a) – Mary's failure to conclude the decision day on April 20th, 2009, against the Undersign Associate in violation to policies (PD-19) & (PD-30), Exhibit 20 and 21 and under color of policies (PD-19) & (PD-30) in violation to the ADA – CFR § 1630.4(i).

23. 29 CFR § 1630.7(a) - Mary's disciplinary action March 20th, 2009, against the Undersign Associate in violation to policies (PD-19) & (PD-30), Exhibit 20 and 21 and under color of policies (PD-19), (PD-30), & (PD-

Complaint

52), Exhibit 23, all being in violation to the ADA – CFR § 1630.4(i).

24-34  29 CFR § 1630.9(a) - Denial of Request for Accommodation, see Exhibits 4 and 11 in derogation to the ADA.

35-39  29 CFR § 1630.9(a) - No Response to Supplemental Request for Accommodation, see Exhibit 13 in derogation to the ADA.

40.  29 CFR § 1630.12(a) - March 20th, 2009 written disciplinary action was not conducted in accordance with the ADA.

41.  29 CFR § 1630.12(a) - April 17th, 2009 Decision Day disciplinary action was not conducted in accordance with the ADA.

42.  29 CFR § 1630.12(a) - May 8th, 2009 retaliation by Mary, see Exhibit 10.

43.  29 CFR § 1630.12(a) - May 8th, 2009 retaliation by Don Millikan, see Exhibit 8.

44.  29 CFR § 1630.12(b) - On April 17th, 2009 Mary and Steve used during the Decision Day disciplinary action intimidation, coercion to interfere with with the Undersign Associates' exercise of the rights protected under the ADA by demanding medical information.

45.  29 CFR § 1630.12(b) - May 8th, 2009, Don with Will and Mary's silence attempted to coerce the Undersign Associate to convert his mandatory acts under the ADA of reasonable accommodation to discretionary acts under the FMLA. See Exhibits 9, 10, and 24.

46.  29 CFR § 1630.13(b) - On April 17th, 2009 Mary and Steve used during the Decision Day disciplinary action intimidation, coercion to interfere with with the Undersign Associates' exercise of the rights protected under the ADA by demanding medical information.

47.  29 CFR § 1630.13(b) - May 8th, 2009, Don with Will and Mary's silence attempted to coerce   the Undersign Associate to convert his mandatory acts under the ADA of reasonable accommodation to discretionary acts under the FMLA. See Exhibits 9, 10, and 24. FMLA procedures require medical certification of medical conditions.

48-53  Termination of Employment - 29 CFR § 1630.4(b), (c), (i), 29 CFR § 1630.12(a) & (b).

Complaint

54    29 CFR 1630.4(e) - Denial of Requests for Accommodation, see Exhibit 31 in derogation to the ADA.

55-56   29 CFR 1630.4(i) - Exhibit 31 is in violation of the ADA in conjunction with employment contract, see Exhibit 12 and Exhibit F therein.

57-59   29 CFR 1630.4(i) - Exhibit 31, Request for Accommodation form converts mandatory rights under ADA to discretionary decisions by employer under the FMLA, in which the FMLA is NOT part of the the employment contract, see Exhibit 12 and Exhibit F therein.

60    29 CFR 1630.7(a) - Exhibit 30 and 31, Request for Accommodation form converts mandatory rights under ADA to discretionary decisions by employer under the FMLA.

61-64   29 CFR 1630.7(a) - Request for Accommodation, Exhibit 31, and is incorporated herein by its reference.

65-67   29 CFR 1630.7(b) - Request for Accommodation, Exhibit 31, and is incorporated herein by its reference.

68-70   29 CFR 1630.9(a) - Request for Accommodation, Exhibit 31, and is in incorporated herein by its reference.

71    29 CFR 1630.12(b) - Request for Accommodation, Exhibit 31, and is incorporated herein by its reference.

72-74   29 CFR 1630.13(b) - Request for Accommodation, Exhibit 31, and is incorporated herein by its reference, denies three (3) requests for accommodation on the basis of no medical certification.

132.   Defendant's actions are the proximate cause to Plaintiff injuries and damages caused by Defendant's actions in an amount of $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

BREACH OF COVENANT OF GOOD AND FAIR DEALING
OR PROMISSORY ESTOPPEL
COUNT LXXXII

133.   Plaintiff re-alleges paragraphs 1 through 132

134.   Defendant employer, through its agents and employees, made certain promises to plaintiff, including but not limited to the promises in defendant employer's store policies,

Complaint

guaranteed full-time employment of a minimum of 34 hours per week, and medical benefits when Plaintiff had put in his time to qualify.

135.    In making these promises to plaintiff, defendant employer knew or should have known that these promises would induce the plaintiff to forgo other employment opportunities  and to forgo other options and opportunities in reasonable reliance on defendant employer's promises and representations.

136.    Plaintiff reasonably relied on defendant employer's promises and representations as set forth in this complaint and was induced by those promises and representations to forgo other options and opportunities.

137.    Plaintiff had a reasonable expectations that Defendant would also be bound to the promises and representations made in those polices of the Defendant and to be working at least 34 hours per week, and continued medical benefits.

138.    As a proximate cause of Defendant's failure to perform according to the promises and and representations which it made to Plaintiff and Plaintiff's reliance on those promises to Plaintiff's detriment, Plaintiff has suffered and continues to suffer substantial losses in compensation all to his damage in a sum exceeding $800,000 plus $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

## WRONGFUL DISCHARGE
## AMERICANS WITH DISABILITY ACT
### COUNT LXXXIII

139.    Plaintiff re-alleges paragraphs 1 – 138.

140.    The Defendant terminated Plaintiff's employment because of Plaintiff's involvment in activity protected under the Americans with Disabilities Act (42 USC §§ 12101 et seqq., and 42 USCA § 2000e) as shown by the allegations in this complaint and attached exhibits. Defendant's termination of Plaintiff in retaliation for Plaintiff's involvement in protected activity is an unlawful employment practice under Americans with Disabilities Act (42 USC §§ 12101 et seqq., and 42 USCA § 2000e).

141.    As a proximate cause of Defendant's termination of Plaintiff in retaliation for Plaintiff's involvement in protected activity is an unlawful employment practice under Americans with

Complaint

Disabilities Act (42 USC §§ 12101 et seqq., and 42 USCA § 2000e) to Plaintiff's detriment, Plaintiff has suffered and continues to suffer substantial losses in compensation all to his damage in a sum exceeding $800,000 plus $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

142.   Defendants committed the acts described in this complaint oppressively, fraudulently, and maliciously, entitling Plaintiff to an award of punitive damages against Defendants in an amount appropriate to punish and make an example of Defendant and its agents and employees.

WRONGFUL DISCHARGE
FAMILY MEDICAL LEAVE ACT
COUNT LXXXIV

143.   Plaintiff re-alleges paragraphs 1 – 142.

144.   The Defendant terminated Plaintiff's employment because of Plaintiff's involvement in activity protected under the Family Medical Leave Act (29 CFR 875.000 et seqq.) as shown by the allegations in this complaint and attached exhibits. Defendant's termination of Plaintiff in retaliation for Plaintiff's involvement in protected activity is an unlawful employment practice under Family Medical Leave Act (29 CFR 875.000 et seqq.).

145.   As a proximate cause of Defendant's termination of Plaintiff in retaliation for Plaintiff's involvement in protected activity is an unlawful employment practice under Americans with Disabilities Act (42 USC §§ 12101 et seqq., and 42 USCA § 2000e) to Plaintiff's detriment, Plaintiff has suffered and continues to suffer substantial losses in compensation all to his damage in a sum exceeding $800,000 plus $300,000 per violation of the ADA, the precise amount to be proven at the time of trial.

WRONGFUL DISCHARGE
FOR DEFAMATION
COUNT LXXXV

146.   Plaintiff re-alleges paragraphs 1 – 145.

147.   Defendant and its agents falsely accused Plaintiff in the series of Coachings (displinary actions) in derogation to Defendant's policies and which was contrary to Americans with Disabilities Act (42 USC §§ 12101 et seqq., and 42 USCA § 2000e).

148.   As a result of Defendant's unlawful conduct Plaintiff has suffered general damages to

Complaint

Plaintiff's reputation in an amount in excess of $ 5,000.

149.    As a further, proximate result of defendant's conduct, Plaintiff has suffered the following special damages economic loss of not being able to find suitable employment, medical benefits, loss of employment and title and other benefits, all to the Plaintiff's injury in an amount in excess of $ 500,000.

150.    Defendant's conduct arose from hatred and ill-will toward plaintiff and a desire to oppress Plaintiff with the wrongful intention of injuring Plaintiff. The conduct was taken with an improper motive amounting to malice and in conscious disregard to Plaintiff's rights and abilities. Because the actions taken toward Plaintiff were carried out in a deliberate, callous, and intentional manner in order to injure the Plaintiff, Plaintiff is entitled to recover punitive damages from defendants in an amount according to proof and in an amount appropriate to punish and make an example of Defendant and its agents and employees.

### WRONGFUL DISCHRAGE
### INTENTIAL INFLICTION OF EMOTIONAL DISTRESS
### COUNT LXXXVI

151.    Plaintiff re-alleges paragraphs 1 – 150.

152.    When agents and employees for the defendant engaged in the above-described conduct, particularly in the repeated demands and injuries into the Plaintiff's medical history of disabilities protected under the ADA and the harassment designed to prevent Plaintiff from receiving the protections under the ADA and the lack of timely response and retaliation in connection with the ADA, Agents and employees of the Defendant did so deliberately and intentionally in order to cause Plaintiff's severe emotional distress.

153.    Defendant's by and through their agents and employees continued confirmation and ratification of the conduct of agents and employees of the Defendant was done with wanton and reckless disregard of the consequences to Plaintiff.

154.    The conduct of Defendant was outrageous and beyond the scope of Defendant's authority. That conduct constituted intentional infliction of emotional distress against Plaintiff.

155.    As a direct and proximate result of the acts of the Defendant, Plaintiff has become upset, distressed, and aggravated, all to the Plaintiff's damage in an amount to be proven at the time of trial.

Complaint

CONTEMPT OF COURT
VIOLATION OF CONSENT DECREE
COUNT LXXXVII

156.    Defendant, Wal-Mart Stores, Inc. has entered into settlement Consent Decrees with other people in the same position as the Plaintiff, in which said decree as part of the settlement, Defendant has agreed to NOT violate any Associate's ADA rights.

157.    Plaintiff complaint showing that Defendant has violated "any Associate's rights under the ADA" is entitled to sanctions for contempt of a Court Ordered Settlement decree.

158    Because the Defendant continues to violate the Orders of Settlement in Consent Decrees, Plaintiff being a damaged party is seeking sanctions of $2,000,000 per Decree which Defendant is in contempt of or an amount according to proof and in an amount appropriate to punish and make an example of Defendant and its agents and employees.

COSTS AND FEES

159.    Plaintiff being the prevailing party requests reasonable costs and fees pursuant to the Americans with Disabilities Act,  42 USC § 12205.

PRAYER FOR RELIEF

160. Plaintiff, Steven David of aver respectfully requests that the Court:

A)      Enter Judgment according to the Counts which become defaulted, Summary Judgment entered or proven at trial for the specific relief as requested in each Count therein.

B)      Award costs and fees in this action.

C)      Any other relief which the Plaintiiff would be entitled to as a matter of law or equity and which the Court deems just.

DEMAND FOR TRIAL BY JURY.

161.    Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Google hereby demands a jury trial on all issues so triable.

Page 20 of 21

Complaint

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he  has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. §1746.

Executed at: 203 Nettleingham Road, Sandpoint, Bonner County, State of Idaho, on this 28th day of July, 2010.

Steven David of ever, In Propria Persona

Mailing:        203 Nettleingham Road
                Sandpoint, near [83864]
                State of Idaho
Phone:          (208)304-6382

Page 21 of 21

Complaint